*In re* ESTATE OF CECIL R. OZIER, Deceased (The University of Illinois YMCA *et al.*, Objectors-Appellants, v. Marie F. Seeber *et al.*, Coexecutors of the Estate of Dorothy Ann Ozier, Deceased, Claimants-Appellees).

Fourth District   No. 4—91—0288

Opinion filed February 13, 1992.—Rehearing denied March 9, 1992.

Tepper & Gwinn, P.C., of Urbana (John Gwinn, of counsel), for appellants.

Marc J. Ansel, of Erwin, Martinkus, Cole & Ansel, of Champaign, for appellees.

JUSTICE McCULLOUGH delivered the opinion of the court:

On March 1, 1991, the circuit court of Champaign County allowed a claim by Marie F. Seeber and Elizabeth Seeber Murphy, coexecutors of the estate of Dorothy Ann Ozier (claimants) against the estate of Cecil Ozier, Dorothy's late husband. This claim was based on a $300,000 promissory note from Cecil to Dorothy which was secured by a mortgage on 31 real estate installment contracts (contracts) executed by Cecil prior to his death. The four charities (objectors) named in Dorothy's will which were to receive all of her real estate appeal, contending (1) the doctrine of merger extinguished the note and mortgage held by Dorothy, and (2) the circuit court's ruling was against the manifest weight of the evidence. We reverse.

Cecil executed his will in 1986, leaving the residue of his estate to Dorothy. Included in the residue were the contracts between Cecil and various purchasers for real property located in Urbana, Illinois. Warranty deeds for these parcels of real estate were held by Busey Bank, as escrow agent.

On October 31, 1988, Cecil executed a promissory note to Dorothy in the amount of $300,000. In return, Cecil gave Dorothy a mortgage on the real property represented by the contracts. The parties also executed a financing statement pursuant to the Uniform Commercial Code (Ill. Rev. Stat. 1989, ch. 26, par. 1—101 et seq.) as further evidence of the note and mortgage.

On March 14, 1990, Cecil died and Dorothy was named as executor of his estate. As such, on May 15, 1990, she filed an inventory of all the real and personal property of Cecil's estate. Dorothy listed no real estate in Cecil's estate; however, she listed the receivables from the contracts as personal property. These contracts were valued at $755,913.90 less an indebtedness of $163,372.03, which was a first mortgage on the property, with the Busey Bank as mortgagee. The inventory did not show any encumbrance by virtue of the promissory note or mortgage of October 31, 1988. Ill. Rev. Stat. 1989, ch. 110½, par. 14—1.

Prior to the distribution of Cecil's estate, on May 14, 1990, Dorothy died. She had also executed a will in 1986 leaving all her personal property and cash to Cecil; however, since Cecil had predeceased her, this personal property and cash was received by the claimants as alternate beneficiaries. Dorothy left all her real estate inherited from Cecil to the objectors, to be distributed as follows: 50% to the Community Foundation of Champaign, 20% to the Mc-

Kinley YMCA, 20% to the University of Illinois YMCA and 10% to the First United Methodist Church.

On August 24, 1990, the new coexecutors of Cecil's estate, Terry and Mary Finnegan, filed an amended inventory of Cecil's estate. This amended inventory listed the receivables from the contracts, less the mortgage to Busey Bank and a $300,000 note and mortgage from Cecil to Dorothy, as personal property. However, these contracts were valued the same in both the original and amended inventory.

The claimants filed a petition for aid and direction to determine whether the contracts were to be distributed as real or personal property. On October 17, 1990, the circuit court ordered them to be distributed as real estate under article V of Dorothy's will, which would have given the real estate to the objectors.

Also on August 24, 1990, the claimants filed a claim for $300,000 against Cecil's estate, and all four charities named in Dorothy's will objected. On March 1, 1991, the circuit court ruled in favor of the claimants, and on March 22, 1991, entered an order allowing the claim. The four charities appeal that order.

■■ The objectors contend the mortgage and note held by Dorothy were extinguished, through the doctrine of merger, when she acquired the contracts through the residuary clause in Cecil's will. The claimants argue Cecil's rights in the contracts became personal property the day he entered into them through the doctrine of equitable conversion and, therefore, merger is inapplicable. The claimants conclude the note is a valid and viable debt which must be paid by Cecil's estate.

> "Equitable conversion is the treating of land as personalty and personalty as land under certain circumstances. \*\*\* The conversion takes place at the time of entering into the contract. It stems from the basic equitable principle that equity regards as done that which ought to be done." (*Shay v. Penrose* (1962), 25 Ill. 2d 447, 449, 185 N.E.2d 218, 219.)

It is not necessary to consider the status of the real estate as to Cecil. Under Cecil's will, Dorothy succeeded to both Cecil's personal property and real property. There is no need to determine the status of Cecil's rights in the real estate contracts because the doctrine of merger clearly extinguished the note and mortgage held by Dorothy prior to her death.

> "When one, who is absolutely entitled in his own right to a charge or incumbrance upon land, becomes the owner in fee of the same land, with no intervening interest or lien, the

charge will at law merge in the ownership and cease to exist. Under like circumstances a merger will take place in equity where no intention to prevent it has been expressed, and none is implied from the circumstances and the interests of the party. [Citation.] The premises in such case become the primary fund for the payment of the mortgage, and whoever acquires that fund and the mortgage also must be regarded as having applied the fund to the payment of the mortgage. [Citation.] The indebtedness will be presumed to have been discharged so soon as the holder of it becomes invested with the title to the land upon which it is charged, 'on the principle that a party may not sue himself at law or in equity.' The purchaser is presumed to have bought the land at its value less the amount of indebtedness secured thereon, and equity will not permit him to hold the land and still collect the debt from the mortgagor." (*Belleville Savings Bank v. Reis* (1891), 136 Ill. 242, 248-49, 26 N.E. 646, 647.)

The vesting in a party of the legal title, at the same time as ownership of the mortgage indebtedness secured by the mortgage upon the title, results in a merger in him and extinguishes the debt evidenced by, for example, a judgment taken upon the notes secured by the mortgage. The merger extinguishes the debt for which the mortgage was security. See, *e.g.*, *Priess v. Buchsbaum* (1947), 332 Ill. App. 565, 574, 76 N.E.2d 195, 199.

■ The doctrine of merger provides that when the same person who is bound to pay is also entitled to receive, there is an extinguishment of rights, such that the debtor and creditor become the same person and there can be no right to put in execution. (*Olney Trust Bank v. Pitts* (1990), 200 Ill. App. 3d 917, 558 N.E.2d 398.) Whether a merger results from greater and lesser estate uniting in the same person depends upon what will best serve the purpose of justice and the intention of the parties. (*Moffet v. Farwell* (1906), 222 Ill. 543, 548, 78 N.E. 925, 927.) In the absence of evidence to the contrary, the law presumes that a mortgagee intended to keep his mortgage alive, when such course was essential to his protection against an intervening title or for other purposes of security, even though through ignorance of the intervening title or inadvertence, the mortgage has been discharged and the note cancelled. *Moffet*, 222 Ill. at 549, 78 N.E. at 927.

■ Rights are said to be merged when the same person who is bound to pay is also entitled to receive. Illinois courts will sometimes prevent a merger even when one party is both obligor and

cbligee on the note. A merger will be prevented by equity, however, only for the purpose of promoting substantial justice; it will not prevent a merger when such prevention would result in carrying an unconscientious wrong into effect. *Jurado v. Simos* (1988), 166 Ill. App. 3d 380, 519 N.E.2d 1018.

It is clear from these principles that when legal title to the real estate described in the contracts passed to Dorothy upon Cecil's death, her mortgage on that real estate was extinguished. As she then owned the greater estate (legal title in fee), the lesser estate (the mortgage) was merged into the greater estate and extinguished.

Moreover, the note which was secured by the mortgage was also extinguished. Under the residuary clause of Cecil's will, Dorothy would receive the residue of his estate. Having received the title to the real estate on which she owned the mortgage to secure the note, the note was satisfied.

The intention of the parties indicates they wanted a merger to occur. Cecil, by designating Dorothy as the beneficiary of the residuary clause and not devising the real estate to any other particular individual, intended for her to acquire title to the real estate. Similarly, Dorothy under article V of her will specifically devised "all the real estate, which I may have inherited from my said husband" to the objectors. Finally, Dorothy, as executor of Cecil's estate, listed the contracts in the inventory of assets and noted they were subject to the first mortgage to the Busey Bank. However, she did not list the mortgage to herself. The intention of the parties, as determined from their respective wills, was that title to the real estate described in the contracts would pass from Cecil to Dorothy upon Cecil's death. At that time, the mortgage and note held by Dorothy were extinguished pursuant to the doctrine of merger.

The administrator of a decedent's estate stands in the shoes of decedent and acquires the same interest in decedent's property as the decedent had. (*Matter v. Sedam* (1989), 191 Ill. App. 3d 369, 547 N.E.2d 1040.) Thus, when Dorothy died, her estate could acquire no greater interest in the property she received from Cecil's estate than what she had prior to her death. When Dorothy became vested with legal title to the real estate, the note and mortgage were extinguished and her estate cannot resurrect the note because of her death. Dorothy had legal title to the real estate immediately upon Cecil's death, and upon her death, legal title immediately passed to the objectors.

A decision is against the manifest weight of the evidence if, after review of the evidence, it is clearly evident that the conclusion opposite to the one reached by the trial court was the proper disposition. (*Stone v. City of Arcola* (1989), 181 Ill. App. 3d 513, 536 N.E.2d 1329.) The decision of the circuit court allowing the claim against Cecil's estate was against the manifest weight of the evidence and is reversed.

Reversed.

STEIGMANN and KNECHT, JJ., concur.