*In re* ESTATE OF ANTHONY G. CAPPETTA, Deceased (W. Thomas Powell, as Adm'r with the Will Annexed of the Estate of Anthony G. Cappetta, Deceased, Petitioner-Appellee, v. Loretta C. Cappetta *et al.*, Respondents-Appellees (Michael F. Gratace, Sr., Indiv. and as Guardian of the Estates of Phillina A. Gratace *et al.*, *et al.*, Claimants-Appellants; The People of the State of Illinois *ex rel.* James E. Ryan, Attorney General, Appellant)).

Second District   Nos. 2—99—0869, 2—99—0846, 2—99—0867, 2—99—0868, 2—99—0870, 2—99—0882, 2—99—0883, 2—99—0884, 2—99—0887 cons.

Opinion filed July 11, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Jan E. Hughes, Assistant Attorney General, of counsel), for the People.

Jeffrey W. Finke, of Chicago, for appellant Michael F. Gratace, Sr.

Wayne T. Lofthouse, of Park Ridge, for appellant Shriners Hospital for Crippled Children.

Arthur F. Cichorski and Robert P. Beilfuss, both of Davis & Cichorski, and Carl P. Clavelli, all of Chicago, for appellant Salvation Army.

Julie L. Trester and Thomas C. Kaufmann, both of Querrey & Harrow, Ltd., of Chicago, for appellants Michalene Mikrut and Therese M. Mudjen.

Denis J. Owens, of Owens, Owens & Rinn, Ltd., of Park Ridge, for appellant Robert J. Sperl.

Celeste M. Reet and Thomas D. Reet, both of St. Charles, Marjorie A. Haag, of Bartlett, Michael Tocci, of West Chicago, and Lori Christopher, of Chicago, appellants *pro se*.

Jack Joseph, of Chicago, for appellee W. Thomas Powell.

Patrick E. Mahoney and Donald R. Crowe, both of Patrick Mahoney & Associates, P.C., of Chicago, for appellee Loretta C. Cappetta.

Patrick C. Keeley and Mark W. Tader, both of Piccione, Keeley & Associates, Ltd., of Wheaton, for appellee Anthony P. Cappetta.

JUSTICE GEIGER delivered the opinion of the court:

This consolidated appeal arises out of the June 23, 1999, order of the circuit court of Du Page County approving a settlement entered into between W. Thomas Powell, as administrator of the estate of Anthony G. Cappetta, deceased (administrator), and several members of the decedent's family. Under the terms of the settlement, the

decedent's estate was to receive payment in the amount of $1.7 million from the decedent's wife, Loretta Cappetta, in return for the dismissal of certain fraudulent transfer actions that the administrator had filed against several members of the decedent's family. On appeal, several claimants of the decedent's estate argue that the trial court erred in approving the settlement and in classifying their claims as seventh-class claims under section 18—10 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/18—10 (West 1998)). We address the latter issue in the nonpublished portion of the opinion.

## FACTUAL BACKGROUND

The decedent, Anthony G. Cappetta, was an attorney and an undertaker. He died testate on January 27, 1997. He was survived by his wife, Loretta Cappetta, and three children. One of these children, Loretta Popelka, was born during the decedent's marriage to Loretta Cappetta. The other two children, Anthony P. Cappetta and Marie Wlosinski, were born during the decedent's prior marriage to Gilda Cappetta. Loretta Cappetta, per nomination in the decedent's will, was initially appointed executor of the estate.

After the decedent's estate was opened, more than 130 separate claimants made claims against the estate totaling between $10 million and $12 million. Many of the claimants were former clients of the decedent's law practice who had given their money to the decedent for him to invest with an entity known as Bell Associates. Unknown to these claimants, there was no such entity known as Bell Associates and the decedent simply deposited these sums into his escrow account. The other claimants consisted of various decedents' and minors' estates that had retained the decedent to handle their affairs. These claimants asserted that the decedent stole assets belonging to the estates.

Ten of these claimants are of particular relevance to the instant appeal. These claimants are as follows:

| Claimant | Amount of Claim |
| --- | --- |
| Robert Sperl, as Executor of the Estate of Rose Denny | $1,084,231 |
| Celeste and Thomas Reet | 204,631 |
| Marjorie Haag | 105,727 |
| Michalene Mikrut and Theresa Mudjen, as Co-Executors of the Estate of Theodore Kaspzycki | 675,568 |
| Lori Christopher | 39,338 |

| | |
|---|---|
| Michael Gratace, as Guardian of the Estates of Phillina Gratace and Michael Gratace, Jr. | 166,141 |
| Michael Gratace, individually | 70,169 |
| Michael Tocci | 75,764. |

The beneficiaries of the estate of Rose Denny included two charitable organizations, the Salvation Army and Shriners Hospital for Crippled Children (Shriners Hospital).

In March 1997, claimants Marjorie Haag, Celeste Reet, and Thomas Reet filed a petition to terminate Loretta Cappetta's independent administration and to remove her as the executor of the decedent's estate. The petition alleged that Loretta Cappetta had a conflict of interest "in that she may have benefitted from, or have been involved with, these investments of her husband" and that all of the Cappetta "family members may have the same conflict of interest." On April 25, 1997, the trial court granted the petition to terminate the independent administration of the estate and ordered that further administration be supervised. The trial court removed Loretta Cappetta as executor and appointed W. Thomas Powell as administrator.

On April 25, 1997, the trial court entered an order freezing the assets of the estate and requiring Loretta Cappetta to file an accounting. Loretta Cappetta subsequently filed an inventory showing that the value of the decedent's personal estate was $172,000 on the date of his death. Loretta Cappetta also filed an accounting detailing her personal disbursements for the nine-month period between October 1, 1997, and June 30, 1998. This accounting indicated that her total disbursements exceeded $160,000.

Discovery also revealed that Loretta Cappetta was the beneficiary of approximately $3.5 million in life insurance from 18 different policies on the life of the decedent. As a result of the decedent's death, Loretta Cappetta also became the sole owner of her Oak Brook residence, which was appraised at $975,000. Loretta Cappetta also owns a 60% interest in the Cappetta Funeral Home, which she had jointly held with the decedent prior to his death.

On July 29, 1997, the administrator filed a petition requesting permission to hire an attorney and an accountant to perform an analysis of the decedent's escrow account. The administrator alleged that such an analysis was necessary in order to account for the discrepancy between the amount of the claims filed and the purported value of the

estate's assets as reported by Loretta Cappetta. The administrator further alleged that the decedent had received "large sums of money" from numerous creditors of the estate and that, because the balance in the decedent's escrow account was less than $50,000 at the time of his death, it appeared that some funds contained in the escrow account had been used "to pay for non-probate assets." The administrator alleged that the estate might have an interest in certain nonprobate assets that passed outside the will. The trial court granted the administrator's petition.

Also on July 29, 1997, the administrator filed a petition seeking the issuance of a citation to discover assets against Loretta Cappetta. In the petition, the administrator alleged that the assets recovered by the estate were insufficient to pay the claims that had been filed and that he believed that Loretta Cappetta might have information concerning additional assets that belonged to the decedent's estate. The trial court granted the petition and ordered Loretta Cappetta to appear for examination by the administrator and the other attorneys representing claimants of the estate. This citation for discovery was subsequently converted to a recovery proceeding on October 16, 1997.

On September 5, 1997, three of the claimants, Michael Gratace, and his two children, Phillina and Michael, Jr. (the Grataces or Gratace family), commenced litigation in the circuit court of Cook County against Loretta Cappetta, Loretta Popelka, Anthony P. Cappetta, Gilda Cappetta, and Cappetta Funeral Home. The claimants sought to set aside approximately 248 allegedly fraudulent transfers made by the decedent to his family members.

The decedent's son, Anthony P. Cappetta (hereinafter Anthony Cappetta), also filed a claim against the decedent's estate, alleging that the decedent had guaranteed certain lease payments totaling $250,000 and that the lease was in default. On October 17, 1997, the administrator filed a counterclaim against Anthony Cappetta, alleging that the decedent had made various fraudulent transfers to Anthony Cappetta in an attempt to avoid the decedent's creditors. These transfers included all of the shares of Cappetta Funeral Home and seven checks drawn on the decedent's escrow account totaling $120,000. The administrator sought the recovery of these assets and also an accounting of all the transactions between the decedent and Anthony Cappetta.

Anthony Cappetta subsequently filed a motion to dismiss the administrator's counterclaim pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1996)). In the motion, Anthony Cappetta argued that the administrator stood in the place of the deceased and could not represent creditors or others who might

have the right to avoid a fraudulent conveyance. On March 2, 1998, following a hearing, the trial court denied the motion to dismiss, ruling that the administrator had the authority to act on behalf of the creditors of the estate to recover fraudulent transfers.

In January 1998, the administrator also initiated citation proceedings against Loretta Popelka, Marie Wlosinski, and Gilda Cappetta. The citation proceedings were initiated to determine whether these individuals had information concerning assets belonging to the estate.

In August 1998, the administrator filed a motion for summary judgment within the citation proceedings against Loretta Cappetta. The motion sought to recover certain property that was not probated and passed to Loretta Cappetta, including the $3.5 million in life insurance she collected, her Oak Brook residence, her interest in a condominium, her interest in the Cappetta Funeral Home, and other cash and property that originated with the decedent. The administrator argued that these assets had been purchased with funds misappropriated by the decedent and that Loretta Cappetta had succeeded to these assets at the expense of the creditors of the estate. The administrator argued that the decedent's transfer of these assets to Loretta Cappetta while he was insolvent constituted a fraudulent transfer. See 740 ILCS 160/5 (West 1998). The administrator concluded that to allow Loretta Cappetta to retain these assets would be a windfall at the expense of the decedent's creditors.

On December 14, 1998, the trial court denied the administrator's motion for summary judgment. In its order denying the motion, the trial court ordered that the parties brief two different issues that had been raised in the motion for summary judgment. Conditioned upon the administrator's showing of a fraudulent transfer, the first issue was whether the administrator could recover the entire $3.5 million in insurance proceeds or whether recovery was limited to the insurance premiums paid plus interest. The second issue was what burden of proof was to be applied in determining whether the decedent was insolvent. These issues were fully briefed by the parties.

On February 24, 1999, Anthony Cappetta, Loretta Cappetta, and the administrator jointly moved for a pretrial conference and for the postponement of all pending matters in the hope that a settlement could be reached. The trial court granted the motion and continued all proceedings until March 15, 1999.

On March 15, 1999, Anthony Cappetta, Loretta Cappetta, and the administrator filed a joint motion to approve settlement. Attached to the motion was a copy of the proposed settlement agreement. The agreement identified the following individuals as parties to the settlement: (1) W. Thomas Powell, as administrator of the decedent's estate;

(2) Loretta Cappetta; (3) Anthony Cappetta; (4) Loretta Popelka; (5) Maria Wlosinski; (6) Gilda Cappetta; and (7) Cappetta Funeral Home, Inc. Each of these parties was a signatory to the agreement. Although the claimants were not listed as parties to the agreement, the agreement did note that the trial court had determined that the administrator had standing to bring actions against the decedent's family members "for the benefit of the estate and all of the creditors, and that the [a]dministrator ha[d] the sole and exclusive right to do so." None of the claimants participated in the negotiations leading up to the settlement agreement.

The settlement provided that Loretta Cappetta would pay the estate $1.7 million in satisfaction of all of the pending actions and citations filed by the administrator and the creditors of the estate against Loretta Cappetta, Anthony Cappetta, Loretta Popelka, Maria Wlosinski, Gilda Cappetta, and Cappetta Funeral Home, including the action filed by the Gratace family in the circuit court of Cook County. The motion to approve settlement also provided:

> "None of the parties to the settlement agreement is satisfied with the result, but all of the parties have in good faith compromised their positions and all believe that it is a rational and good faith disposition of the controversies and the best they are likely to be able to do at this time considering all of the circumstances. While obtaining anything less than all that is claimed by all parties or by paying any sum whatsoever may be a disappointment to all parties, the parties must act in what they see is, from a rational standpoint, their best interest, particularly the best interest of the claimants."

The terms of the settlement also prohibited the continuation or future initiation of any further legal proceedings by any of the creditors against Loretta Cappetta, Anthony Cappetta, Anne Cappetta, Marie Wlosinski, Loretta Popelka, Gilda Cappetta, and the Cappetta Funeral Home.

A joint motion to reject the settlement agreement was filed by 53 claimants. Separate objections were filed by other claimants, including the estate of Theodore Kaspzycki and the estate of Rose Denny. These claimants objected to the settlement as a "token" amount that did not sufficiently compensate the claimants for their losses. The claimants alleged that the settlement would permit the Cappetta family to continue to enjoy their current lifestyle at the expense of the claimants.

On June 23, 1999, the trial court held a hearing on the motion to approve settlement. At the hearing, the trial court allowed the claimants who were present the opportunity to speak. The attorney representing the Gratace family argued that the settlement should be

rejected because it required the termination of their separate proceedings against the Cappetta family pending in Cook County. Counsel argued that the termination of those proceedings would be unfair, as the Gratace family had been prosecuting the actions for two years and had a right to maintain an action separate and apart from that brought by the administrator.

The attorney representing the estate of Rose Denny also spoke during the hearing. Counsel advised the trial court that the two charities that were beneficiaries of the Rose Denny estate, the Salvation Army and Shriners Hospital, objected to the settlement because it drastically reduced the amounts that they were to receive. These sentiments were echoed by an attorney representing Shriners Hospital, who also spoke during the hearing. The Illinois Attorney General also spoke on behalf of the charities and urged the trial court to reject the settlement as insufficient.

After hearing these arguments, the trial court entered an order approving the settlement. The trial court noted that its obligation in reviewing the settlement was to insure that the agreement had been entered in good faith and complied with the law. The trial court further noted that the law encourages settlements and that the Probate Act gives the administrator alone the power to pursue and settle actions on behalf of the claimants. The trial court also considered a number of factors, including the length of time that the matter had been pending, the costs of litigation, the possibility of an appeal, and the possibility that further litigation might result in less moneys to the claimants than the $1.7 million provided by the settlement. After considering all of these factors, the trial court found that the settlement was in the best interest of all of the litigants and the claimants.

In regard to the fraudulent transfer action filed by the Gratace family in Cook County, the trial court found that it entailed the same claims that had been pursued and settled by the administrator. The trial court therefore entered an order providing that "[a]ll persons and entities including all claimants and their agents and attorneys *** in this estate be and they hereby are permanently enjoined and restrained from initiating, continuing, or maintaining any action, suit, petition or other proceeding arising out of dealings with the [decedent] against all or any of Loretta C. Cappetta, Anthony P. Cappetta, Anne Cappetta, Maria Wlosinski, Loretta Popelka, Gilda C. Cappetta, any of their spouses, children or relatives, and Cappetta Funeral Home, Inc."

Timely notices of appeal were subsequently filed by the Gratace family, the Illinois Attorney General, Celeste Reet, the estate of Rose Denny, the estate of Theodore Kaspzycki, Lori Christopher, Marjorie Haag, Thomas Reet, and Michael Tocci. Timely separate notices of appeal were filed by the Salvation Army and Shriners Hospital.

Separate appellant's briefs have been filed by the Illinois Attorney General and the Gratace family and a joint brief by the Salvation Army and Shriners Hospital. The estate of Rose Denny, the estate of Theodore Kaspzycki, Lori Christopher, Marjorie Haag, Celeste Reet, Thomas Reet, and Michael Tocci have all joined in the brief filed by the Illinois Attorney General. A joint appellees' brief was filed by Loretta Cappetta, Anthony Cappetta, and the administrator.

## DISCUSSION

On appeal, each of the appellants argues that the trial court erred in granting the motion to approve the settlement. They argue that the trial court failed to determine whether the assets available for recovery by the decedent's estate were limited to those for which the matter settled. They also argue that the settlement agreement was in violation of public policy, as it was grossly unfair and unconscionable to the interests of the claimants.

Additionally, the Grataces argue that the trial court erred in enjoining them from pursuing their independent action against the decedent's family members in Cook County and in classifying their claims as seventh-class claims. The Salvation Army and Shriners Hospital also argue that the trial court erred in classifying the claims of the estate of Rose Denny as seventh class.

### A

As an initial matter, the appellees argue that the Illinois Attorney General, the Salvation Army, and Shriners Hospital have no standing to appeal the trial court's decision. The appellees argue that the Illinois Attorney General does not have a direct interest in this case, as the charitable organizations whose interests it represents were not beneficiaries of or claimants to the decedent's estate. The appellees also assert that the Illinois Attorney General did not meaningfully participate in any of the proceedings below and waived any argument on appeal. Additionally, the appellees argue that the Salvation Army and Shriners Hospital are nonparties and do not have standing to file a separate appeal pursuant to Supreme Court Rule 303(a)(3). 155 Ill. 2d R. 303(a)(3).

■ These issues have already been raised and briefed as part of numerous motions to dismiss the appeal filed by the appellees. After considering these arguments, this court denied the motions to dismiss. Although the appellees request that we consider these arguments once again, we decline to do so. Rather, we reaffirm our previous ruling that the Illinois Attorney General has standing to appeal the trial court's decision by virtue of his common-law and statutory authority to assure that the funds bequeathed to a charitable organization are

applied to their intended charitable use. See 760 ILCS 55/1 *et seq.* (West 1998); *In re Estate of Stern*, 240 Ill. App. 3d 834, 837 (1992). We also reaffirm our determination that the Salvation Army and Shriners Hospital have standing to file a separate appeal given their direct, immediate, and substantial interest in the subject matter, which would be prejudiced by the judgment or benefitted by its reversal. *Success National Bank v. Specialist Eye Care Center, S.C.*, 304 Ill. App. 3d 74, 76 (1999).

## B

We next turn to a consideration of whether the trial court erred in approving the settlement agreement. The appellants' argument on appeal centers on two different aspects of the settlement agreement: (1) its requirement that the claimants be enjoined from pursuing their independent actions against the decedent's family members, and (2) the sufficiency of the $1.7 million settlement amount. We will consider each of these arguments in turn.

## 1

As detailed above, the settlement agreement entered between the administrator and the decedent's family members contained a clause providing that, as a condition of settlement, all claimants would be enjoined from initiating or continuing any action against the decedent's family members relating to the claimants' dealings with the decedent. After approving the settlement agreement, the trial court entered an order permanently enjoining the claimants from initiating, continuing, or maintaining any action, suit, petition, or other proceeding arising out of the decedent's dealings with his family members. This order specifically enjoined the Gratace family from pursuing its independent action against the decedent's family members in Cook County.

On appeal, the Grataces argue that the trial court erred as a matter of law when it determined that they could not maintain a separate and independent suit seeking to set aside the alleged fraudulent transfers made between the decedent and his family members. They argue that, as creditors of the decedent, they had the right to pursue their own action to set aside these transfers pursuant to the Uniform Fraudulent Transfer Act (740 ILCS 160/1 *et seq.* (West 1998)). They conclude that the trial court's order enjoining them from pursuing their independent suit was a violation of their constitutional rights.

In response, the appellees rely on the trial court's March 2, 1998, order, which specifically provided that the administrator had the authority to pursue all claims on behalf of all the creditors. The appellees contend that this order prevented all of the claimants from pursu-

ing independent actions against the members of the decedent's family. The appellees argue that the Gratace family's attorney was present in court at the time that the trial court made this ruling and that he did not object to the entry of this order. Additionally, the appellees argue that the Grataces' independent lawsuit arises out of the same transaction or occurrence as those settled by the administrator on their behalf.

The real crux of the parties' dispute centers on whether the trial court could properly authorize the administrator to act on behalf of the creditors of the estate to set aside the decedent's allegedly fraudulent transfers. To resolve this issue, we must first examine the nature of the administrator's authority and determine whether he had the right to maintain such an action in the first instance.

■ The long-standing rule in Illinois has been that an administrator is bound by the fraudulent conveyances made by a decedent and that the transferred assets may not be recovered by the estate. *Majorowicz v. Payson*, 153 Ill. 484, 487-88 (1894). An administrator's duties are generally limited to collecting the estate, converting it into cash, and distributing it to those entitled thereto. *In re Estate of Wallen*, 262 Ill. App. 3d 61, 72 (1994). Although the administrator has a fiduciary duty to those individuals interested in the estate, such as the creditors and the heirs (*Wallen*, 262 Ill. App. 3d at 72), the administrator nonetheless stands in the shoes of the decedent and acquires the same interest in the decedent's property that the decedent had, but no more (*In re Estate of Ozier*, 225 Ill. App. 3d 33, 37 (1992)). The administrator therefore has no authority to attempt to set aside a fraudulent conveyance made by the decedent prior to his death. *Hoyt v. Northup*, 256 Ill. 604, 606 (1912). Rather, the right to avoid a conveyance made by the decedent to defraud a creditor lies with the creditor who has been defrauded. *Hoyt*, 256 Ill. at 606.

In *Majorowicz v. Payson*, 153 Ill. 484, 484-85 (1894), the administrator of a decedent's estate filed an action to set aside conveyances of machinery and real estate made by the decedent prior to his death. The administrator alleged that the conveyances were made by the decedent in an attempt to "hinder and delay" his creditors. On appeal, the decedent's heirs argued that the administrator had no authority to set aside a fraudulent conveyance made by the decedent. The Illinois Supreme Court agreed and held that the action should have been dismissed. *Majorowicz*, 153 Ill. at 487.

This principle was also noted in *Ellis v. Petty*, 51 Ill. App. 636 (1893). In that case, the decedent conveyed certain moneys, notes, and personal property to his wife prior to his death. After the decedent's death, the wife placed these assets with the defendants for the purpose of applying them to satisfy the decedent's debts. The wife subsequently

became dissatisfied with the defendants' services, caused an administrator to be appointed, and filed suit against the defendants for the value of these assets. In her suit, the decedent's wife alleged that the defendants failed to apply the assets as they had agreed. The jury found in favor of the wife and a judgment was entered on her behalf. *Ellis*, 51 Ill. App. at 637.

On appeal, the defendants argued that the assets had been conveyed by the decedent to his wife in an attempt to avoid the payment of the decedent's debts. The defendants therefore argued that the conveyance was void and that the assets belonged to the decedent's estate. The defendants thus concluded that only the administrator could seek to recover damages for the misappropriation of the assets. *Ellis*, 51 Ill. App. at 638. The reviewing court rejected this argument, explaining:

> "The transfer might be impeached by creditors, if it was a fraud upon them, but it could not be by the administrator, and subject to the rights of creditors the title of [the wife] was good. [The defendants], having received the property from her as her bailees or trustees, can not be heard to say that it was not hers." *Ellis*, 51 Ill. App. at 639.

The reviewing court therefore held that the decedent's conveyance was valid as to the wife and affirmed the jury's verdict. *Ellis*, 51 Ill. App. at 639.

■ The Illinois Supreme Court also commented upon the administrator's inability to set aside a decedent's fraudulent conveyances in *Hoyt v. Northup*, 256 Ill. 604 (1912), and *White v. Russell*, 79 Ill. 155 (1875). In *Hoyt*, the court noted that, because the administrator "does not represent creditors or others who would have a right to avoid a conveyance binding upon the deceased, he has no authority to file the bill to set aside such a conveyance." *Hoyt*, 256 Ill. at 606. In *White*, the court made a similar observation, commenting:

> "[W]here a debtor, in his lifetime, makes a fraudulent conveyance to hinder or delay his creditors, such a conveyance, although void as to creditors, is binding on his heirs and representatives. Neither his heirs, executors nor his administrators can maintain a bill to set aside the conveyance, as it is binding on them. This being true, the only mode of reaching such property is by a bill, filed by one or more of the creditors of the estate." *White*, 79 Ill. at 158.

Although these authorities substantially predate the legislature's enactment of the current version of the Probate Act and the Uniform Fraudulent Transfer Act in 1990, we nonetheless believe that the principles expressed therein remain valid. Under the current Probate Act, the administrator still stands in the shoes of the decedent and

acquires the same interest in the decedent's property as the decedent had. *Ozier*, 225 Ill. App. 3d at 37. Therefore, the administrator is without standing to complain about the propriety of voluntary conveyances that a decedent made himself.

■ Additionally, we note that, under the provisions of the Uniform Fraudulent Transfer Act, only creditors may maintain actions to set aside fraudulent transfers. 740 ILCS 160/8 (West 1998). A creditor is defined as "a person who has a claim." 740 ILCS 160/2(d) (West 1998). Thus, in order for the administrator to be a creditor, the decedent would have had to have a claim against himself. Such a supposition is inherently illogical and untenable. Rather, we believe that the appropriate rule of law is that an administrator is without the authority to attack those conveyances made by the decedent himself; only creditors may seek to set aside such transfers as fraudulent. See *Majorowicz*, 153 Ill. at 487.

■ Applying these principles to the instant case, it is apparent that the trial court erred in determining that the administrator had standing to challenge the conveyances that the decedent made to members of his family. As detailed above, the decedent's creditors were the only entities with the authority to file such actions. See *Majorowicz*, 153 Ill. at 487. The Grataces, as creditors of the decedent, had the right to maintain an action to set aside these allegedly fraudulent conveyances pursuant to section 8 of the Uniform Fraudulent Transfers Act (740 ILCS 160/8 (West 1998)), and it was error for the trial court to enjoin them from pursuing their pending litigation in Cook County.

■ In so holding, we reject the appellees' contention that the Gratace family waived this issue by failing to object to the trial court's March 2, 1998, order, which specifically provided that the administrator could pursue fraudulent transfer actions on behalf of all the creditors. We do not believe that the Gratace family waived its right to maintain a separate action against the members of the decedent's family merely because it failed to join Anthony Cappetta's motion to dismiss the administrator's counterclaim. The Gratace family diligently pursued its action in the circuit court of Cook County and vigorously opposed the administrator's attempts to have its action dismissed or transferred. We therefore do not believe that the Gratace family has waived its right to pursue the family's claims in Cook County.

■ The appellees also assert that public policy and judicial economy favor the trial court's decision to permit the administrator to proceed on behalf of the creditors. The appellees argue that, absent the administrator's ability to act on behalf of the claimants, it was entirely possible that each of the claimants would have brought separate ac-

tions against the members of the decedent's family. However, such an argument presupposes that the administrator had standing to maintain such an action in the first instance. As detailed above, the administrator was without standing and the appellees' judicial economy argument therefore fails.

■ Finally, the appellees contend that, if this court dissolves the trial court's injunction, the settlement agreement would no longer be binding on the members of the decedent's family. The appellees apparently are referring to paragraph 7 of the agreement, which provides as follows:

> "This agreement is intended to preclude all controversies between the estate of Anthony G. Cappetta and all its creditors against the Cappetta parties, and this agreement is made on the basis of the Court's determination that the Administrator has the right to bring this action on behalf of all creditors, including creditors who have brought, or may bring, or contemplate bringing separate actions or suits against the Cappetta parties or any of them."

The appellees argue that, without the settlement agreement, the creditors stand in danger of receiving nothing.

The effect of our ruling on the settlement agreement, which will be discussed below, is not an appropriate consideration in examining the issues raised by the Grataces in their timely filed appeal. As detailed above, the law accords the Grataces, as creditors of the decedent, the right to pursue an action to set aside allegedly fraudulent transfers made by the decedent to his family members. The Grataces have been vigilant in preserving their rights and are not to blame for the errors of law committed by the trial court during the proceedings below. Accordingly, we reverse that portion of the trial court's June 23, 1999, order enjoining the Gratace family and the other claimants from initiating, continuing, or maintaining any action against the members of the decedent's family.

2

■ The appellants' next contention on appeal is that the $1.7 million settlement amount was grossly unfair and unconscionable to the interests of the claimants. They argue that the trial court erred in accepting the settlement without first considering whether the assets available for recovery by the decedent's estate were limited to those for which the matter settled. They request that we reverse the trial court's order approving the settlement agreement and remand the cause for further proceedings.

Traditionally, the probate court has substantial deference in deciding whether to approve a settlement reached by the representative of an estate. *Ott v. Little Company of Mary Hospital*, 273 Ill. App. 3d 563,

573 (1995). Prior to approving a settlement, the probate court is required to consider the parties' positions, analyze their potential strengths and weaknesses, and estimate the probabilities of liability and the damage award. *Ott*, 273 Ill. App. 3d at 573. The court should also examine the circumstances surrounding the settlement to make sure that the settlement was the product of good-faith negotiation and compromise. When the court has made such an examination and has determined that settlement, rather than the uncertainties of further litigation, is in the best interest of the estate, and when that determination is supported by the record, it will be affirmed. *Ott*, 273 Ill. App. 3d at 574.

Although the appellants' primary objection to the settlement agreement focuses upon the sufficiency of the settlement amount, we believe that the resolution of this issue lies in the legal principles already discussed. Under long-standing Illinois Supreme Court precedent, the administrator was without any legal authority to challenge the validity of the transfers made by the decedent to his family members. *Majorowicz*, 153 Ill. at 487. The administrator therefore was without standing to prosecute and settle such an action on behalf of the decedent's creditors. *Majorowicz*, 153 Ill. at 487. Lacking the authority to prosecute a fraudulent transfer action, it would be illogical to conclude that the administrator could have negotiated and compromised the action in good faith.

In addition to this lack of authority, we also note that the administrator had a fiduciary obligation to all of the individuals having an interest in the decedent's estate, including the decedent's heirs and creditors. *Wallen*, 262 Ill. App. 3d at 72. There can be no dispute that the heirs and the creditors had conflicting interests in the litigation below. Given the administrator's fiduciary obligation to both the heirs and the creditors, the administrator had a conflict of interest and could not adequately pursue the interests of the decedent's creditors during the settlement negotiations. See generally *In re Estate of Lilly*, 41 Ill. App. 3d 348, 352-54 (1976) (vacating settlement in wrongful death action in which the decedent's estate was administered by the same law firm that represented the defendant insurer).

Given the circumstances surrounding the settlement, we do not believe that the trial court could have reasonably concluded that the instant agreement was the product of good-faith negotiation and compromise. The administrator had no right or authority to negotiate and settle the fraudulent transfer actions on behalf of the creditors of the estate. In approving the settlement, the trial court effectively gave the administrator the right to settle the creditors' claims without the input or consent of the creditors. See generally *Business & Profes-*

*sional People for the Public Interest v. Illinois Commerce Comm'n,* 136 Ill. 2d 192, 218 (1989) (Illinois Commerce Commission erred in imposing settlement not agreed to by all of the parties and intervenors). For all of these reasons, we hold that the trial court abused its discretion in approving the settlement.

The appellees urge this court to nonetheless affirm the settlement agreement because the creditors did not appeal the trial court's March 2, 1998, order finding that the administrator had the authority to pursue fraudulent transfer actions on behalf of all creditors. We decline to do so. The trial court's March 2, 1998, order was not a final and appealable order. The order was entered in denying Anthony Cappetta's motion to dismiss the administrator's counterclaim and did not contain Rule 304(a) language.

Additionally, at the hearing on the joint motion to approve settlement, the appellants did specifically object to the settlement agreement and indicated that they did not wish to be bound by administrator's negotiations. On appeal, the appellants have likewise indicated that they do not wish to be bound by the terms of the settlement. Accordingly, we reject the appellees' request to affirm a settlement agreement that the administrator was without the authority to negotiate.

During oral argument, the appellees argued that this court should affirm the trial court's settlement agreement even if the administrator was without the authority to negotiate on behalf of the creditors. Specifically, the appellees noted that the individual claimants may be unable to maintain independent actions to set aside the decedent's fraudulent transfers due to the expiration of the applicable limitations period. The appellees therefore conclude that, without the settlement agreement, the claimants will receive nothing at all. Despite the appellees' invitation, we decline to comment or speculate upon the viability of any future proceeding initiated by a creditor, as that issue is not before us. Rather, we are constrained to apply the long-standing legal principles elaborated above to the issue presently before us. Under those principles, the administrator was without the authority to maintain fraudulent transfer actions on behalf of the creditors, and we therefore must reverse the trial court's order approving the settlement agreement in its entirety.

C

The material in this section is nonpublishable under Supreme Court Rule 23.

CONCLUSION

For the foregoing reasons, we reverse the trial court's June 23, 1999, order approving the settlement agreement and remand the cause

for further proceedings consistent with this opinion. Additionally, for the reasons stated in the nonpublished portion of this opinion, we affirm the trial court's orders classifying the appellants' claims as seventh-class pursuant to section 18—10 of the Probate Act.

Affirmed in part and reversed in part; cause remanded.

McLAREN and COLWELL, JJ., concur.