**Matter of Martin SZEKELY and Donna Szekely, Debtors.**

No. 89 C 5340.
Bankruptcy No. 88 B 17026.

United States District Court,
N.D. Illinois, E.D.

Feb. 23, 1990.

Donald H. Geiger, Waukegan, Ill., for appellants.

Andrew J. Maxwell, Chicago, Ill., for appellee.

MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

In December 1988, Martin and Donna Szekely voluntarily petitioned for bankruptcy. No one made the Szekelys file for bankruptcy; they did it themselves. Why? Probably for the same reason most people do: to gain respite from the financial pres-

sures of their creditors. See Benjamin Weintraub and Alan N. Resnick, Bankruptcy Law Manual ¶ 9.01 (Warren, Gorham & Lamont rev. ed. 1986). But even in bankruptcy there's no such thing as a free lunch. The filing of a petition in bankruptcy gives the debtor temporary relief from his or her creditors, but it also sets in motion a process of settling debts, hopefully once and for all. The debtor who chooses relief under the federal bankruptcy laws opts for the method of settlement contained in that law. If he or she does not like the way which Congress has chosen for settling his or her debts, he or she can choose not to petition for bankruptcy, and let his or her creditors do their worst.

The Szekelys wish this were not so. One of the few assets they owned was their residence in Zion, Illinois, a home whose value exceeded $15,000. Liking where they lived, the Szekelys remained in their residence after they petitioned for bankruptcy.[1] As they were entering bankruptcy, someone told them that they could claim a "homestead exemption." They assumed that this meant that they no longer had to pay their bills to the two banks which held mortgages on their residence. They also believed that they did not have to accede to the request of the Trustee of their bankruptcy estate for "rent" while they remained in their home. The Trustee asked the bankruptcy court to order the Szekelys to pay; after a hearing on the matter, the bankruptcy court sided with the Trustee.

The Szekelys apparently moved out of their residence sometime after the bankruptcy court's order, but they refuse to pay "back rent." Since the court's order was interlocutory, they have asked for and received leave to appeal from this court under 28 U.S.C. § 158(a) (1982).

■ At the exact moment when a person petitions for bankruptcy, all of his or her property—with only a few exceptions not relevant here—becomes part of the bankruptcy estate. See 11 U.S.C. § 541(a)(1). When Congress said all, it meant all. See Bankruptcy Reform Act of 1978, Sen.Rep. No. 95–989, 95th Cong.2d Sess. 82 (1978), U.S.Code Cong. & Admin. News 5787, 5868 ("[Section 541(a)(1)] includes as property of the estate all property of the debtor, even that needed for a fresh start."); *Koch Refining v. Farmers Union Cent. Exchange, Inc.*, 831 F.2d 1339, 1343 (7th Cir.1987). The person responsible for administering and subsequently liquidating the bankruptcy estate in a proceeding under Chapter 7 is the trustee. Among the trustee's duties is the collection of rents on properties that are part of the bankruptcy estate. See 11 U.S.C. § 704.

■ Once the Szekelys petitioned for bankruptcy, their home remained their home, in a metaphysical sense, but the property in which their home was located became someone else's—the bankruptcy estate's. A property owner has the right to charge his or her tenants rent, and a bankruptcy estate is no different from any other property owner in this respect. After they petitioned for bankruptcy, the Szekelys became tenants and the bankruptcy estate became their landlord. Accordingly, the bankruptcy estate had the power to charge the Szekelys rent for use of the estate's property, and the Trustee had the right to collect that rent. See *Matter of Ament*, 77 B.R. 439, 440 (Bankr.Del.1987).

■ "What about the homestead?" the Szekelys argue. The Bankruptcy Code indeed provides certain exemptions for debtors, many of which are found in 11 U.S.C. § 522. By operation of § 522(b), persons who are domiciled in Illinois can claim what is popularly known as Illinois's "homestead exemption," Ill.Rev.Stat. ch. 110 ¶ 12–901 (1987). That statute provides:

> Every individual is entitled to an estate of homestead to the extent in value of $7,500, in the ... lot of land and buildings thereon, ... or in personal property, owned ... and occupied by him or her as a residence; and such homestead, and all

---

1. Although they filed under Chapter 13 of the Bankruptcy Code, 11 U.S.C. §§ 1301 et seq. (1988), the Szekelys successfully moved for conversion of the proceedings to one under Chapter 7, *id.* at §§ 701 et seq., in January 1989.

right and title therein, is exempt from attachment, judgment, levy or judgment sale for the payment of his or her debts or other purposes....

The Szekelys' view that they did not owe the Trustee rent finds some support in the text of this exemption. One could construe the exemption as protecting the homestead, securing it even from the mandate of 11 U.S.C. § 541(a) that all of the debtor's property enter the bankruptcy estate upon the filing of a bankruptcy petition.

The Illinois courts have not given the homestead exemption this effect. Beginning with the exemption contained in the Homestead Act of 1857, the Illinois courts have read the exemption as securing a monetary value in property which qualifies for the exemption, and not protecting the property from all onslaught.[2] See, for example, *Mix v. King*, 55 Ill. 434 (1870) (refusing to restore person entitled to homestead exemption to enjoyment of the property which had a value in excess of statutory amount; court instead ordered homestead exemption to be "set off" against proceeds of sale and rent from property); *Hotchkiss v. Brooks*, 93 Ill. 386, 390–91 (1879) (where value of property exceeds value allowed by homestead exemption, creditors have right to proceed against property; homestead exemption does not exempt entire property). Nowhere does the statute provide that persons living in a homestead may live there rent-free.

Under § 541(a) of the Bankruptcy Code, the debtor's property enters the bankruptcy estate upon the filing of the petition; it is then the debtor's turn to claim his or her exemptions under § 522. See Sen.Rep. 95–989 at 82. The Illinois homestead exemption allows Illinois debtors to claim up to $7,500 per person from the bankruptcy estate for having their homestead enter that estate. That means that the Szekelys were entitled to claim $15,000 from the bankruptcy estate established in this case. It

does not mean that they were entitled to keep their house for free.

■ · The Szekelys raise two arguments why this is the wrong way to effect the homestead exemption. They first direct the court to 11 U.S.C. § 542(a), which provides:

[A]n entity ... in possession, custody, or control, during the case, of property ... that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

The Szekelys argue that since they could claim a homestead exemption for their property, it was "of inconsequential value or benefit to the estate," and thus they did not have to pay rent on it. Stating the argument reveals its weaknesses. First, since the Szekely residence exceeded $15,000 in value, it had value to the estate: every penny over $15,000 could pay debt. Second, § 542(a) describes only the power of the trustee to force persons holding the property of the bankruptcy estate to turn that property over to the estate. It does not define the interest of the estate in that property.

The Szekelys' second argument is that this is unfair: why should a trustee burden the debtor with the cost of using residential property while the trustee takes his or her time looking for a buyer? Of course, there is the reverse proposition: why should creditors have to bear the debtor's housing expenses while they await liquidation of the estate? The latter proposition overcomes the former. The economic presumption in this society is that people have to pay for the use of property owned by others. When the Szekelys filed for bankruptcy, their property became the property of the bankruptcy estate. That estate has the right to payment for the use of its property.

---

**2.** The only occasions when the Illinois courts have implied that the exemption means something more are those where the value of the property in question was less than the statutory ceiling. In these instances the courts justifiably proclaim that the entire homestead is exempt from liens or forced sale of any kind—not because the law says so, but only because on the facts presented that is the law's effect. See, for example, *Dixon v. Moller*, 42 Ill.App.3d 688, 692, 1 Ill.Dec. 411, 696–97, 356 N.E.2d 599, 603–04 (1976).

The decision of the bankruptcy court is AFFIRMED.