**In re Barry B. KREISLER, Debtor.**

**Marsha D. Erenberg, Debtor.**

**Nos. 02 B 21934, 02 B 21935.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Oct. 4, 2005.

365

See also 2005 WL 1411909.

Edward P. Freud, Ruff, Weidenaar & Reidy, Ltd., Chicago, Illinois, for Movant.

Peter A. Siddiqui Jenner & Block LLP, Chicago, Illinois, for Respondent.

Catherine Steege, Chicago, IL, trustee.

## MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes before the Court on the motion of Garlin Mortgage Corporation ("Garlin") to have its secured claims deemed allowed and for such claims to be paid by Catherine Steege, the Chapter 7 trustee (the "Trustee") for the estates of Barry B. Kreisler ("Barry") and Marsha D. Erenberg ("Marsha") out of proceeds held from the sale of certain real property. The Trustee objects to Garlin's claims. For the reasons set forth herein, the Court sustains, in part, the Trustee's objections. The Court finds that Garlin's claims should be equitably subordinated under 11 U.S.C. § 510(c) to the claims of all unsecured creditors for Garlin's failure to comply

with Federal Rule of Bankruptcy Procedure 3001(e)(2). Further, Garlin's claims should be equitably subordinated as a result of its inequitable conduct. Finally, the Court overrules the Trustee's objections to Garlin's claims on the bases that the underlying debt owed to Garlin was extinguished under the doctrine of merger and that the claims were not timely filed.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).

## II. FACTS AND BACKGROUND

Barry testified that, prior to the bankruptcy filings, he owned a 60% interest in a limited liability corporation known as K & E, L.L.C. and Marsha owned a 40% interest therein. He further stated that on May 22, 2001, K & E, L.L.C. owned a 94.5% interest in certain real property located at 1623 and 1627 North Western Avenue in Chicago, Illinois, consisting of two commercial condominium units and three parking spaces (the "Western Avenue Properties"). The remaining 5.5% interest was owned by Barry.

The Western Avenue Properties were encumbered by three mortgage liens. The first mortgage lien was held by Uptown National Bank of Chicago, now known as Bridgeview Bank Group ("Bridgeview Bank"). Garlin Ex. No. 18 at p. 9. The Western Avenue Properties were also partially encumbered by a second mortgage dated November 20, 2000, executed by Barry in favor of his mother, Frances Kreisler, to secure a note in the original principal amount of $200,000.00. Garlin Ex. No. 7. The Frances Kreisler mortgage, by its express terms, encumbered only Barry's undivided 5.5% interest in the Western Avenue Properties. *Id.*

On May 22, 2001, Montana/Ashland L.L.C. ("Montana/Ashland"), a limited liability company in which Barry owned a 30% interest, Trustee Ex. No. 35, and of which Marsha was a member, Trustee Ex. No. 36, executed a mortgage note in favor of Community Bank of Ravenswood ("Community Bank") in the sum of $800,000.00.[1] Trustee Ex. No. 1; Garlin Ex. No. 3. On that same date, Montana/Ashland executed a second mortgage note in favor of Community Bank in the amount of $996,000.00. Garlin Ex. No 4. Both of these notes were related to loans made by Community Bank to Montana/Ashland for the purpose of acquiring and developing certain real property located at 2325 North Ashland Avenue in Chicago (the "Ashland Avenue Property"). In exchange for the notes, Community Bank was granted a security interest in the Ashland Avenue Property, as well as the third mortgage on the Western Avenue Properties. Trustee Ex. No. 2; Garlin Ex. No. 2. This junior mortgage and security agreement were executed by K & E, L.L.C. on May 22, 2001 and constituted a valid and perfected mortgage interest encumbering the Western Avenue Properties. *Id.*

Montana/Ashland defaulted on the notes. Community Bank took a deed in lieu of foreclosure of the Ashland Avenue

---

1. Prior to the trial, Garlin objected to many of the Trustee's exhibits (Trustee Ex. Nos. 3–11, 15–18, and 33–36). At the trial, the Court informed the parties that it would rule on those objections when each exhibit was sought to be introduced into evidence. Many of the Trustee's exhibits were admitted over objection. However, counsel for the Trustee failed to introduce the remaining exhibits. Consequently, the Court will not refer to those exhibits. *See* Trustee Ex. Nos. 3, 4, 10, 11, and 15–18.

Property. Thereafter, Community Bank sold the Ashland Avenue Property for $950,000.00 and applied the proceeds of the sale against the outstanding balances due under the notes. Trustee Ex. No. 24. The remaining collateral securing Community Bank's debt under the notes was the Western Avenue Properties. Trustee Ex. Nos. 35 and 36.

On June 5, 2002, both Barry and Marsha filed voluntary bankruptcy petitions under Chapter 11. *Id.* On June 18, 2002, the Court entered an order directing that the cases be jointly administered but not substantively consolidated. Subsequently, on November 25, 2002, Barry's case was converted to Chapter 7, and the Trustee was appointed shortly after conversion. Marsha's case was converted to Chapter 7 on January 23, 2003. Thereafter, the Trustee was appointed in her case. Community Bank filed proofs of claim in both Barry's and Marsha's cases on September 27, 2002, each in the sum of $892,798.99. Trustee Ex. Nos. 33 and 34.

As of the date of the bankruptcy filing, Barry's assets included a 62.2% ownership interest in the Western Avenue Properties. Trustee Ex. No. 35, Schedule A—Real Property; Garlin Ex. No. 11 at p. 3. Marsha owned the remaining 37.8% interest in the Western Avenue Properties. Trustee Ex. No. 36, Schedule A—Real Property; Garlin Ex. No. 11 at p. 3.

On June 3, 2003, Barry created a new corporation, Western Loan Corp., now known as Garlin,[2] for the sole purpose of purchasing Community Bank's notes and junior mortgage on the Western Avenue Properties. Trustee Ex. No. 7; Garlin Ex. No. 16. The principals of Garlin, Linda

Horwitz ("Linda"), Barry's sister, and Gary Schneier ("Gary"), Marsha's close friend, were the officers and directors of Garlin. Linda was the president and secretary, as well as on the board of directors. Trustee Ex. No. 12. Gary was the vice president, treasurer, and assistant secretary. *Id.* At trial, both Linda and Gary testified that they provided no capital to Garlin, did not perform the duties of officers and directors of a corporation, were not involved in the formation of the corporation, and were unaware of the actions taken by Garlin during its existence. Rather, Linda and Gary testified that Barry performed all of these tasks on behalf of the corporation. Indeed, Garlin did not hold any meetings or conduct any business until October of 2003. *Id.* Nevertheless, from March through October 2003, Barry and Marsha, through Garlin, tried to enter into an agreement with Community Bank to acquire its notes and mortgage. In an attempt to consummate the transaction, Barry sent numerous letters to Community Bank and copied Marsha on all of those letters. Trustee Ex. Nos. 5–9.

On October 1, 2003, Garlin conducted its first meeting of directors. Trustee Ex. Nos. 12 and 13. Gary testified that Barry attended the meeting and drafted its corporate minutes. Thereafter, on October 16, 2003, Garlin passed a corporate resolution to perform the following acts: (1) acquire the mortgage and notes from Community Bank for $16,500.00; (2) hire Barry to serve as its counsel for that transaction; and (3) borrow funds from K & E Investments, Inc. ("K & E Investments")[3] to complete the acquisition of the mortgage and notes. Trustee Ex. No. 14. The engagement letter between Garlin and Barry

---

**2.** On November 10, 2003, Western Loan Corp. filed articles of amendment, drafted by Barry, with the Illinois Secretary of State whereby it changed its name to Garlin. Trustee Ex. No. 19; Garlin Ex. No. 17. Additionally, on November 26, 2003, Garlin changed

its registered agent from Barry to Linda Horwitz, Barry's sister. Trustee Ex. No. 20.

**3.** K & E Investments is an entity separate and distinct from K & E, L.L.C. Its sole shareholders, officers, and directors at the time of the

provided that he would earn a contingent fee of $35,000.00 once Community Bank's mortgage and notes were acquired and the Western Avenue Properties were sold at a foreclosure sale. *Id.* In order to purchase the mortgage and notes, Garlin borrowed $25,000.00 from K & E Investments by executing a note payable to K & E Investments which was due on December 31, 2003. *Id.* The note provided for a 10% interest rate per annum and the potential for 20% interest upon default. *Id.* Barry testified that he handled most of the negotiations for Garlin with Community Bank and drafted Garlin's minutes and resolutions, as well as the note to K & E Investments.

On November 14, 2003, Garlin made a check payable to Community Bank in the sum of $16,500.00 for the purchase of the mortgage and notes. Trustee Ex. No. 21. Subsequently, on December 17, 2003, Community Bank assigned to Garlin its junior mortgage on the Western Avenue Properties and the notes pursuant to an assignment of promissory notes and related loan and collateral documents. Trustee Ex. No. 22; Garlin Ex. No. 1. The assignment was recorded in Cook County on December 22, 2003.[4] *Id.*

On July 1, 2004, the Court entered orders in both Barry's and Marsha's cases granting the Trustee's motion to sell the Western Avenue Properties for the total sum of $371,000.00 with liens to attach to the sale proceeds. Garlin Ex. Nos. 8 and 9. The orders provided that "[a]ny party

claiming a lien against the sale proceeds is hereby directed to file a claim with the Trustee within thirty (30) days, or the claim against the proceeds will be forever barred." *Id.* at ¶ 6.

Garlin, as the assignee of the junior mortgage and notes from Community Bank filed a claim on July 19, 2004 in the sum of $92,936.78 in Barry's case, Trustee Ex. No. 33; Garlin Ex. No. 12, and filed a claim in Marsha's case on that same date in the same amount, Trustee Ex. No. 34; Garlin Ex. No. 13. Bridgeview Bank also timely filed an amended claim in both cases with respect to its mortgage. Trustee Ex. Nos. 27, 33, and 34.

The sale of the Western Avenue Properties closed on August 16, 2004. Trustee Ex. No. 26. Pursuant to an order of the Court, the Bridgeview Bank first mortgage was paid in full on August 25, 2004, in the sum of $253,315.34 out of the sale proceeds held by the Trustee.[5] Trustee Ex. No. 29; Garlin Ex. No. 10. After the payment of the Bridgeview Bank mortgage, the Trustee now holds $105,443.76. Of this amount, $65,586.02 represents Barry's interest in the Western Avenue Properties, and $39,857.74 represents Marsha's interest. Garlin Ex. No. 11. On June 9, 2005, the Court issued a Memorandum Opinion wherein it found that Frances Kreisler holds a secured claim in the amount of $302,700.00 plus interest and attorney's fees, which is secured by, among other things, the Western Avenue Properties. *Kreisler v. Steege (In re Kreisler),* Bankr.

---

transaction were Barry and Marsha. K & E Investments is still owed the money it lent to Garlin to buy the junior mortgage and notes from Community Bank on the Western Avenue Properties. This is all of the information with respect to K & E Investments that the Court was able to discern from the limited record.

**4.** The Trustee does not dispute that Community Bank, and now Garlin pursuant to the

assignment, has secured claims against Barry's and Marsha's estates that are sought to be paid from the remaining proceeds of the sale of the Western Avenue Properties after payment of superior liens.

**5.** In particular, $157,562.14 was paid from Barry's estate, and $95,753.20 was paid from Marsha's estate. Garlin Ex. No. 10.

No. 02 B 21934, Adv. No. 04 A 02923, 2005 WL 1411909, at *4 (Bankr.N.D.Ill. June 9, 2005). As a result of Frances Kreisler's secured claim, there remains no equity in Barry's or Marsha's estates' interests in the Western Avenue Properties. Indeed, the Trustee maintains that because there is no equity in Barry's interest in the sale proceeds of the Western Avenue Properties to pay Garlin, its claim in his case is unsecured or at least undersecured. The Trustee contends that only $39,857.74 of the proceeds from the sale of the Western Avenue Properties, representing Marsha's interest, remains available to pay Garlin's claim in her case.

Garlin asserts through the testimony of William Marquardsen ("Marquardsen"), vice president of Community Bank, that, as of March 14, 2003, after the application of proceeds of sale from other collateral, there remains due and owing to Garlin's assignor, Community Bank, the sum of $84,258.93 on the mortgage in the original principal amount of $800,000.00.[6] According to Marquardsen, after March 14, 2003, Community Bank did not receive any payments and did not make any disbursements with respect to the notes, which accrued additional interest and late fees in accordance with the terms of the notes and mortgage. Trustee Ex. No. 23; Garlin Ex. No. 6. Garlin has never received any payment on the notes. The notes matured in accordance with their terms on September 30, 2002. Garlin Ex. Nos. 3 and 4. The notes provide that after the maturity date, interest shall accrue on the balance of the principal at the rate of 6% above the prime rate of interest per annum.[7] Id. Barry testified that as of May 12, 2005, Garlin is owed the sum of $103,088.18 plus attorney's fees and costs.

In October 2004, Garlin filed the instant motion to have its secured claims deemed allowed and for such claims to be paid from the sale proceeds of the Western Avenue Properties. The Trustee argues that Garlin's claims should be disallowed as secured for four reasons: (1) Garlin failed to comply with the Federal Rule of Bankruptcy Procedure that governs the transfer of claims; (2) by purchasing the mortgage and notes from Community Bank, Barry and Marsha effectuated a merger of interest between the mortgagor and mortgagee of the Western Avenue Properties, which, under Illinois law, extinguishes the claims; (3) Garlin's claims meet all of the requirements of equitable subordination, and equity demands that Barry and Marsha not benefit from their behavior; and (4) Garlin failed to file its proofs of claim before the bar date. The Court will address each argument in turn.

## III. DISCUSSION

### A. Whether Garlin Complied with the Requirements of Federal Rule of Bankruptcy Procedure 3001(e)(2)

#### 1. The Trustee's Standing to Raise Garlin's Failure to Comply with Bankruptcy Rule 3001(e)(2)

Before turning to the issue of whether Garlin violated Federal Rule of

---

**6.** Pursuant to Marquardsen's affidavit, however, as of March 14, 2003, Community Bank is owed $74,886.61. Trustee Ex. No. 23; Garlin Ex No. 6. Marquardsen testified that the discrepancy in the figures resulted from an unresolved property tax issue that had slipped through the cracks and was not calculated into the $74,886.61 amount. According to Marquardsen, the $84,258.93 figure is the correct one.

**7.** The notes specify that the term "prime rate" shall mean the prime rate of interest published in *The Wall Street Journal*. Garlin Ex. Nos. 3 and 4. The prime rate of interest published in *The Wall Street Journal* from October 1, 2003 through March 22, 2005 has fluctuated. Garlin Ex. No. 5.

Bankruptcy Procedure 3001(e)(2), the Court must address Garlin's contention that the Trustee lacks standing to object to Garlin's failure to comply with the Rule. The Court summarily rejects this argument. The principal role of a trustee in bankruptcy is to collect money and other assets that may be owing to a debtor. *See Steinberg v. Buczynski,* 40 F.3d 890, 891 (7th Cir.1994). Section 704 of the Bankruptcy Code specifically sets forth a trustee's duties, which include "collect[ing] and reduc[ing] to money the property of the estate" and "examin[ing] proofs of claims and object[ing] to the allowance of any claim that is improper[.]" 11 U.S.C. § 704(1) and (5). In *Koch Refining v. Farmers Union Central Exchange, Inc.,* 831 F.2d 1339 (7th Cir.1987), *cert. denied,* 485 U.S. 906, 108 S.Ct. 1077, 99 L.Ed.2d 237 (1988), the Seventh Circuit stated that the trustee has a duty to marshal a debtor's property for the benefit of the estate and has a right to file suit against parties to recover that property. *Id.* at 1343. The court also noted that:

> the trustee has no standing to bring *personal* claims of creditors. A cause of action is "personal" if the claimant himself is harmed and no other claimant or creditor has an interest in the cause. But allegations that could be asserted by any creditor could be brought by the trustee as a representative of all creditors.

*Id.* at 1348–49 (emphasis in original); *see also Fisher v. Apostolou,* 155 F.3d 876, 879 (7th Cir.1998) ("[T]he trustee has the sole responsibility to represent the estate, by bringing actions on its behalf to marshal assets for the benefit of the estate's creditors.").

In the present case, the Trustee is not bringing the objections to the claims based on personal claims of a specific creditor. Rather, pursuant to § 704(5), she brings the instant objections on behalf of the bankruptcy estates for all unsecured creditors of Barry and Marsha. All unsecured creditors have an interest in the objections because disallowance or equitable subordination of Garlin's claims will result in a potentially higher dividend distribution to the unsecured creditors. The Trustee "represents not only the rights of the debtor[s] but also the interests of creditors of the debtor[s]." *See Koch,* 831 F.2d at 1342. Moreover, under 11 U.S.C. § 502(a), a claim objection can be lodged by "a party in interest." Courts have interpreted the term "party in interest" broadly, finding that it includes " 'all persons whose pecuniary interests are directly affected by the bankruptcy proceedings.' " *In re Hutchinson,* 5 F.3d 750, 756 (4th Cir.1993) (*quoting White County Bank v. Leavell (In re Leavell),* 141 B.R. 393, 399 (Bankr.S.D.Ill.1992)). Creditors of the debtor are parties in interest within the meaning of § 502. *See In re FBN Food Servs., Inc.,* 82 F.3d 1387, 1391 (7th Cir. 1996). Certainly, a Chapter 7 case trustee who represents the interests of all of the unsecured creditors is "a party in interest" for purposes of claim objections under § 502. After all, the trustee is charged with the duty of objecting to "improper" claims pursuant to § 704(5). Accordingly, the Court rejects Garlin's contention that the Trustee does not have standing to raise the issue of Garlin's failure to comply with Bankruptcy Rule 3001(e)(2).[8]

---

**8.** Garlin cites to *Southern Pacific Transportation Co. v. Voluntary Purchasing Groups, Inc.,* 229 B.R. 119 (E.D.Tex.1999), for the proposition that the Trustee does not have standing to object to a claim transfer under Rule 3001(e)(2). Specifically, Garlin quotes the portion of the case which states that "some courts have questioned whether parties such as the Committee even have standing to raise Rule 3001(e)(2) objections given that the only

### 2. Garlin's Failure to File Evidence of the Transfer

Next, the Court addresses the Trustee's argument that Garlin failed to comply with the requirements of Bankruptcy Rule 3001(e)(2). Specifically, the Trustee contends that on December 17, 2003, Community Bank assigned its notes and mortgage to Garlin for $16,500.00 and that, pursuant to Bankruptcy Rule 3001(e)(2), Garlin was required to file evidence of the transfer with the Court. According to the Trustee, Garlin's failure to file evidence of the transfer impeded the Trustee's ability to procure her own settlement with Community Bank for the estates and has, therefore, prejudiced the estates.

Bankruptcy Rule 3001(e)(2) deals with transferred claims and provides in pertinent part as follows:

> If a claim ... has been transferred ... after the proof of claim has been filed, evidence of the transfer shall be filed by the transferee. The clerk shall immediately notify the alleged transferor by mail of the filing of the evidence of transfer and that objection thereto, if any, must be filed within 20 days of the mailing of the notice or within any additional time allowed by the court. If the alleged transferor files a timely objection and the court finds, after notice and a hearing, that the claim has been transferred other than for security, it shall enter an order substituting the transferee for the transferor. If a timely objection is not filed by the alleged transfer-

or, the transferee shall be substituted for the transferor.

Fed. R. Bankr.P. 3001(e)(2) (emphasis supplied).

■ Pursuant to Bankruptcy Rule 3001(e)(2), a transferee of a proof of claim that has already been filed must file evidence of the transfer. *In re Wilson*, 96 B.R. 257, 261 (9th Cir. BAP 1988). Such evidence puts the trustee on notice that the original holder of the claim against the estate is no longer an interested party with respect to that claim. *In re Ellington*, 151 B.R. 90, 96 (Bankr.W.D.Tex.1993).

■ For a valid transfer of claim to occur, Bankruptcy Rule 3001(e) must be followed. *In re Hoffman*, 98 B.R. 783, 784 (Bankr.S.D.Ohio 1989) ("[T]he purpose for the rule is to prevent the fraudulent transfer of claims for the purpose of receiving unwarranted dividends and the requirement must be fulfilled."). Indeed, "Rule 3001(e)(2) is more than a simple housekeeping rule.... [F]ailure to file notice of transfer of claim is not a defect which can be cured." *Ellington*, 151 B.R. at 99. "When a party fails to file a statement of transfer of claim, that party proceeds at its own risk...." *Id.* at 96.

■ "The use of the word 'shall' in Rule 3001(e)(2) indicates that Congress considered the filing of such notice to be mandatory." *Wilson*, 96 B.R. at 261. The plain and ordinary meaning of the word "shall" is mandatory, not precatory. *See Blessing v. Freestone*, 520 U.S. 329, 341, 117 S.Ct. 1353, 137 L.Ed.2d 569(1997);

---

party expressly authorized to object to a claim transfer under that rule is a transferor...." *Id.* at 121. The Court is not bound by this decision. Under the principle of stare decisis, lower courts are bound to follow the decisions of higher or superior courts. *In re Swanson*, 289 B.R. 372, 374 (Bankr.C.D.Ill.2003); *In re Shattuc Cable Corp.*, 138 B.R. 557, 565 (Bankr.N.D.Ill.1992). A Texas district court

is not a superior court to this Court in the same respect that the United States Supreme Court and the Seventh Circuit Court of Appeals are higher courts. *See Shattuc*, 138 B.R. at 566. This Court is obliged to follow the holdings of those courts, not the holding from the Texas district court. The Court has considered that case, but respectfully declines to follow it.

*Marie O. v. Edgar,* 131 F.3d 610, 620 (7th Cir.1997); *Banner Indus., Inc. v. Cent. States, Se. & Sw. Areas Pension Fund,* 875 F.2d 1285, 1288 n. 2 (7th Cir.1989); *United States v. Anderson,* 798 F.2d 919, 924 (7th Cir.1986); *In re NTG Indus., Inc.,* 118 B.R. 606, 610 (Bankr.N.D.Ill. 1990); BLACK'S LAW DICTIONARY 1379 (7th ed.1999) (defining "shall" to mean "[h]as a duty to; more broadly, is required to . . . .").

▇▇ Community Bank filed a proof of claim in Barry's and Marsha's cases on September 27, 2002. Community Bank's assignment of its junior mortgage and notes to Garlin occurred in December 2003. While that assignment was recorded in Cook County, evidence of the transfer was not filed with the Clerk of this Court. Garlin offers no excuse for its failure to file evidence of the transfer. Instead, it argues that the Trustee has not been prejudiced in any way by Garlin's failure to technically comply with Rule 3001(e)(2). Further, Garlin maintains that the substantive requirements of the Rule were complied with when Garlin filed its motion to modify the automatic stay on January 16, 2004. Specifically, Garlin contends that because it alleged in paragraph five of that motion that it was a secured creditor by virtue of its acquisition of the mortgage and notes and provided a copy of the assignment as an exhibit to the motion, it complied with the substance of Rule 3001(e)(2). The Court finds Garlin's argument disingenuous given the clear mandatory language of the Rule.

The Court finds that Garlin failed to comply with Bankruptcy Rule 3001(e)(2), and its failure has prejudiced the unsecured creditors of both Barry's and Marsha's estates whose potential dividends from the remaining sale proceeds of the Western Avenue Properties will be eliminated if Garlin's claims are paid in part from those proceeds. The fact that the Trustee may have been aware of the transfer or that Garlin made mention of the transfer in a motion does not obviate its compliance with the Rule. The Trustee testified that she first learned in January of 2004 that Community Bank's mortgage and notes had been assigned to Garlin. She also stated that had she known that Community Bank was willing to sell its claims against the estates for the reduced amount of $16,500.00, she would have attempted to more favorably resolve the claims of Community Bank, which may have resulted in the removal of a secured creditor from the pool of creditors, thereby enhancing the dividend to the estates' unsecured creditors. Garlin's failure to follow the Rule caused the unsecured creditors of Barry's and Marsha's estates to be prejudiced.

▇▇ In short, Garlin's failure to file evidence of the transfer of Community Bank's claims pursuant to Bankruptcy Rule 3001(e)(2) constitutes cause to equitably subordinate or deny Garlin's claims. The Court, in its discretion, equitably subordinates Garlin's claims to the claims of all other unsecured creditors because of Garlin's failure to comply with Bankruptcy Rule 3001(e)(2).

**B. Whether Garlin's Purchase of the Mortgage and Notes from Community Bank Effectuated a Merger of Interest Between the Mortgagor and Mortgagee of the Western Avenue Properties**

Next, the Trustee contends that Garlin's purchase of the mortgage and notes from Community Bank effectuated a merger of interest between the mortgagor and mortgagee of the Western Avenue Properties, which, under Illinois law, extinguishes Garlin's claims. In particular, the Trustee alleges that Barry and Marsha, through

various corporations and other business entities they controlled, became both the mortgagor and mortgagee of the Western Avenue Properties. The Trustee asserts that Barry and Marsha controlled both Garlin, the assignee of the mortgagee, and K & E, L.L.C., the mortgagor. As a result, the Trustee argues, Garlin's debt was extinguished.

 Pursuant to Illinois law, "[w]hen a mortgagor takes title and acquires the mortgagee's interest in the property securing the mortgage indebtedness . . . a merger of the lesser and greater estates is deemed to occur and the underlying debt is extinguished. . . ." *In re Toth,* 61 B.R. 160, 170 (Bankr.N.D.Ill. 1986); *see also In re Estate of Ozier,* 225 Ill.App.3d 33, 167 Ill.Dec. 195, 587 N.E.2d 77, 80 (1992), *appeal denied,* 145 Ill.2d 634, 173 Ill.Dec. 5, 596 N.E.2d 629 (1992) ("The doctrine of merger provides that when the same person who is bound to pay is also entitled to receive, there is an extinguishment of rights. . . ."); *Olney Trust Bank v. Pitts,* 200 Ill.App.3d 917, 146 Ill.Dec. 435, 558 N.E.2d 398, 403 (1990) (same). Whether a court determines a merger has resulted from the greater and lesser estates uniting in the same individual or entity depends on both the intention of the parties and the interests of justice. *Ozier,* 167 Ill.Dec. 195, 587 N.E.2d at 80.

It is undisputed that when Community Bank made the assignment of the mortgage and notes to Garlin, Garlin as assignee became the holder of that mortgage. K & E, L.L.C., on the other hand, was the mortgagor. The Trustee asserts that as a result of the assignment, Barry and Marsha were on both sides of the mortgage because they controlled Garlin and K & E, L.L.C. The Court must determine whether a merger of the lesser and greater estates occurred. In other words, the question is whether the same individual or entity that is bound to pay the mortgage is also entitled to receive payment thereof.

Garlin's argues that from the date the Trustee was appointed in these cases to the date of the sale of the Western Avenue Properties, the Trustee was the sole legal and equitable owner of the Western Avenue Properties. Thus, Garlin contends, there was never a merger of the lesser and greater estates because the Trustee and Garlin are separate and distinct. According to Garlin, then, there was never a unity of interest between the mortgagor and mortgagee. Garlin's argument completely misses the mark.

 An estate is created upon the filing of a bankruptcy petition. 11 U.S.C. § 541(a). The estate is comprised of, *inter alia,* "all legal or equitable interests of the debtor in property as of the commencement of the case." *Id.; see also In re Szekely,* 111 B.R. 681, 682 (N.D.Ill.1990), *rev'd on other grounds,* 936 F.2d 897 (7th Cir.1991). The case trustee is responsible for administering the bankruptcy estate, *Szekely,* 111 B.R. at 682, and is the designated representative of the debtor's estate, 11 U.S.C. § 323(a); *Apostolou,* 155 F.3d at 879; *Midway Airlines, Inc. v. Nw. Airlines, Inc. (In re Midway Airlines, Inc.),* 154 B.R. 248, 256 (N.D.Ill.1993). "Whatever 'legal and equitable interests' the debtor had in property as of the filing of the bankruptcy petition is property of the bankruptcy estate." *Koch,* 831 F.2d at 1343.

By virtue of the bankruptcy filings, the Trustee did not become the mortgagor of the Western Avenue Properties. Nor did she become the "sole legal and equitable owner" of Barry's and Marsha's property. Rather, she became the designated representative of the estates charged with administering property of those estates for the benefit of the creditors. Hence, the Court rejects Garlin's argument that the

Trustee effectively was the owner of the Western Avenue Properties thereby precluding application of the doctrine of merger. Nevertheless, the Court declines to apply the *doctrine of merger to the matter* at bar.

 The Trustee wants this Court to find that Garlin is not a legal entity separate and distinct from K & E, L.L.C., and to conclude instead that they are one in the same. Illinois law[9] generally treats a corporation as a legal entity separate and distinct from other corporations or individuals with which it may be affiliated. *Main Bank of Chi. v. Baker*, 86 Ill.2d 188, 56 Ill.Dec. 14, 427 N.E.2d 94, 101 (1981); *see also Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir.1985). The Illinois Supreme Court has recognized, however, that a corporate entity will be disregarded, and its veil of limited liability pierced, when two requirements are met: (1) there must be such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist; and (2) adherence to the fiction of separate corporate existence would sanction a fraud or promote an injustice. *Baker*, 56 Ill.Dec. 14, 427 N.E.2d at 101; *see also Int'l Fin. Servs. Corp. v. Chromas Tech.*, 356 F.3d 731, 736 (7th Cir.2004); *Sea–Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir.1991) (*citing Baker*); *Van Dorn*, 753 F.2d at 569–70 (same). Factors that the Illinois courts have considered in the determination of whether the first prong of the test has been met are: (1) the failure to maintain adequate corporate records or to comply with corporate formalities; (2) the commingling of funds or assets; (3) undercapitalization; and (4) one corporation treating the assets of another corporation as its own. *Baker*, 56 Ill.Dec. 14, 427 N.E.2d at 102; *see also Sea–Land Servs.*, 941 F.2d at 521; *Van Dorn*, 753 F.2d at 570. Once the "mere instrumentality" test has been satisfied, either the sanctioning of a fraud or the promotion of injustice will satisfy the second prong of the test. *Sea–Land Servs.*, 941 F.2d at 522; *Van Dorn*, 753 F.2d at 570.

 Disregard of the corporate identity is based on an equitable doctrine. *Koch*, 831 F.2d at 1345. Therefore, determination of whether to disregard the corporate entity depends upon the circumstances of each case. *Lumpkin v. Envirodyne Indus., Inc.*, 933 F.2d 449, 463 (7th Cir.1991). "Whether to pierce the corporate veil is a matter of the trial court's discretion." *Chromas*, 356 F.3d at 736.

 The Court finds that the Trustee failed to show that there was such a unity of interest and ownership that the separate personalities of Garlin and K & E, L.L.C. no longer existed. Garlin complied with some of the corporate formalities. There was no evidence of the commingling of funds or assets between Garlin and K & E, L.L.C. Moreover, there was no evidence that K & E, L.L.C. treated Garlin's assets as its own. Finally, Garlin borrowed $25,000.00 from K & E Investments, which was more than the $16,500.00 purchase price for Community Bank's mortgage and notes. Nevertheless, based on the limited record, the Court cannot make the finding that Garlin was undercapitalized. Even if Garlin were undercapitalized, this factor standing alone is insufficient to establish that Garlin was a "mere instrumentality" of K & E, L.L.C. *See Gallagher v. Reconco Builders, Inc.*, 91 Ill.App.3d 999, 47 Ill.

9. It is undisputed that Garlin was incorporated in Illinois and, thus, Illinois law applies here.

Dec. 555, 415 N.E.2d 560, 564 (1980). Finally, the Trustee failed to show that there would be inequity or fraud if the Court were to find that Garlin and K & E, L.L.C. have separate corporate identities. That Barry and Marsha may have controlled both Garlin and K & E, L.L.C. as discussed *infra*, does not mean that the Court should exercise its discretion and disregard the corporate formalities as to Garlin.

In sum, the Court is unwilling to disregard the corporate entities and find that Garlin, the assignee of the mortgagee, and K & E, L.L.C., the mortgagor, were one in the same so that a merger of the lesser and greater estates occurred and the underlying debt of Garlin was effectively extinguished. Consequently, the Court overrules the Trustee's objection to Garlin's claims on the basis that the doctrine of merger effectively extinguished Garlin's underlying debt.

### C. Whether Garlin's Claims Should Be Equitably Subordinated Under 11 U.S.C. § 510(c)

Next, the Trustee argues that Barry and Marsha have engaged in inequitable conduct that has prejudiced the estates by creating a new corporation, Garlin, comprised of family and friends, that has masqueraded as a secured creditor in an effort to thwart the Trustee's ability to maximize dividends for the unsecured creditors. According to the Trustee, Barry and Marsha are the true owners of both Garlin and its claims, and this ownership is sufficient to equitably subordinate Garlin's claims.

 The doctrine of equitable subordination recognizes the bankruptcy court's fundamental role as a court of equity and permits the court to disallow or subordinate claims which, if allowed, would produce unjust results. *Pepper v. Litton,* 308 U.S. 295, 304–06, 60 S.Ct. 238, 84 L.Ed. 281 (1939). The goal of equitable

subordination "is to undo or offset any inequity in the claim position of a creditor that will produce injustice or unfairness to other creditors in terms of the bankruptcy results." *In re Virtual Network Servs. Corp.,* 98 B.R. 343, 350 (N.D.Ill.1989) (internal quotation omitted), *aff'd,* 902 F.2d 1246 (7th Cir.1990). Section 510(c)(1) of the Code provides for the equitable subordination of a claim and states as follows:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest[.]

11 U.S.C. § 510(c)(1).

 The Supreme Court pointedly held in *United States v. Noland,* 517 U.S. 535, 116 S.Ct. 1524, 134 L.Ed.2d 748 (1996), that "the bankruptcy court may not equitably subordinate claims on a categorical basis in derogation of Congress's scheme of priorities." *Id.* at 536, 116 S.Ct. 1524. Although Congress included no explicit criteria for equitable subordination when it enacted § 510(c), the reference to "principles of equitable subordination" in the statute indicates that Congress intended courts to start with the existing doctrine and then develop the doctrine through case law in the future. *Id.* at 539, 116 S.Ct. 1524; *In re Envirodyne Indus., Inc.,* 79 F.3d 579, 581 (7th Cir.1996); *Virtual Network,* 902 F.2d at 1249–50. "[C]ourts are not given license to legislate entire new categories of subordination claims; rather, the determination of whether to subordinate a particular claim is a factual inquiry that must be made on a case-by-case basis." *Daley v. Chang (In re Joy Recovery Tech. Corp.),* 286 B.R. 54, 83

(Bankr.N.D.Ill.2002). Equitable subordination "should be invoked only in extreme circumstances and only where a clear inequity has been wrought. . . ." *Aetna Bank v. Dvorak,* 176 B.R. 160, 166 (N.D.Ill.1994). Furthermore, the doctrine is remedial, not penal, and should be applied only to the extent necessary to offset the specific harm that creditors suffered as a result of the inequitable conduct. *Braas Sys., Inc. v. WMR Partners (In re Octagon Roofing),* 157 B.R. 852, 857 (N.D.Ill.1993).

 The equitable subordination of a claim moves a creditor down in the order of payment from the assets of the bankruptcy estate, thereby reducing or eliminating the sum that creditor can recover. *In re Lifschultz Fast Freight,* 132 F.3d 339, 341 (7th Cir.1997). "Subordination affects only the priority of payment, not the right to payment. If the assets in a given estate are sufficient, a subordinated claim certainly has the potential for receiving a distribution. . . ." *Bank of Am. Nat'l Ass'n v. N. LaSalle St. Ltd. P'ship (In re 203 N. LaSalle St. P'ship),* 246 B.R. 325, 332 (Bankr.N.D.Ill.2000).

 The Seventh Circuit Court of Appeals in its most recent decision regarding equitable subordination stated that the exercise of the power of equitable subordination is appropriate only if three conditions are met: (1) the claimant engaged in some type of inequitable conduct; (2) the misconduct resulted in injury to other creditors or conferred some unfair advantage on the claimant; and (3) equitable subordination of the claim is not inconsistent with other provisions of the Bankruptcy Code. *Lifschultz,* 132 F.3d at 344 (*citing In re Mobile Steel Co.,* 563 F.2d 692, 700 (5th Cir.1977)); *see also In re Vitreous Steel Prods. Co.,* 911 F.2d 1223, 1237 (7th Cir.1990). Satisfaction of the three-prong test does not require a court to equitably subordinate a claim; a court has discretion to take such action. *Octagon Roofing,* 157 B.R. at 857.

The Supreme Court expressly declined to decide "whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." *Noland,* 517 U.S. at 543, 116 S.Ct. 1524. However, the Seventh Circuit and lower courts have held that inequitable conduct is a requirement where the claims of secured creditors are being challenged.[10] *In re EDC, Inc.* 930 F.2d 1275, 1282 (7th Cir.1991) (dismissing an equitable subordination claim against a secured creditor because no evidence of misconduct was present); *Herzog v. Leighton Holdings, Ltd. (In re Kids Creek Partners, L.P.),* 212 B.R. 898, 928 (Bankr.N.D.Ill.1997), *aff'd,* 239 B.R. 497 (N.D.Ill.1999); *Braas Sys., Inc. v. WMR Partners (In re Octagon Roofing),* 141 B.R. 968, 980 (Bankr.N.D.Ill. 1992), *aff'd,* 157 B.R. 852 (N.D.Ill.1993); *Aluminum Mills Corp. v. Citicorp N. Am.,*

---

10. Prior to the *Lifschultz* case, the Seventh Circuit had repeatedly stated that "equitable subordination no longer requires, in all circumstances, some inequitable conduct on the part of the creditor." *Virtual Network,* 902 F.2d at 1250; *see also Envirodyne,* 79 F.3d at 581; *Vitreous Steel,* 911 F.2d at 1237. Indeed, the *Virtual Network* court emphasized that " § 510(c)(1) authorizes courts to equitably subordinate claims to other claims on a case-by-case basis without requiring in every instance inequitable conduct on the part of the creditor. . . ." 902 F.2d at 1250. Never-

theless, the Seventh Circuit cleared up any confusion in *Lifschultz* when it emphatically noted that "inequitable conduct is still the general rule for equitable subordination." 132 F.3d at 349. The *Lifschultz* court cautioned parties against "mistak[ing] the birth of an exception for the death of a rule" when making the argument that the requirement of inequitable conduct no longer exists. *Id.* at 348. The court instructed that it was incorrect to assume that "creditor misconduct is no longer a requirement in any circumstance or instance. . . ." *Id.*

*Inc. (In re Aluminum Mills Corp.)*, 132 B.R. 869, 894 (Bankr.N.D.Ill.1991).

In the matter at bar, the Trustee seeks to equitably subordinate Garlin's secured claims under the theory that Barry and Marsha created Garlin in a scheme to have Garlin purchase Community Bank's claims against the estates for a lesser sum than what was owed to Community Bank in the hopes that Garlin could recover the full amount of its claims, ultimately benefitting Barry and Marsha, who control Garlin, to the detriment of the unsecured creditors of the estates. In order to prevail under this theory, the Trustee must show inequitable conduct by Garlin.

■ Whether a creditor's conduct is deemed inequitable under § 510(c) depends on the nature of the relationship between the debtor and the creditor whose claim is subject to attack on grounds of equitable subordination. *Octagon Roofing*, 157 B.R. at 858; *Aluminum Mills*, 132 B.R. at 894; *Badger Freightways, Inc. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi. (In re Badger Freightways, Inc.)*, 106 B.R. 971, 976 (Bankr.N.D.Ill.1989). The case law that has developed under the doctrine of equitable subordination draws a distinction between the claims of creditors who are insiders [11] of the debtor and the claims of creditors who are not insiders. *Leighton Holdings*, 239 B.R. at 504–05. Specifically, the dealings of an insider or fiduciary of the debtor are subject to a higher level of scrutiny than the dealings of a non-insider third party. *Id.* Courts have held that where a creditor is an insider of the debtor, a lesser standard is utilized to determine whether equitable subordination is appropriate. *Kids Creek*, 212 B.R. at 928. Claims between a debtor and its

insiders are closely examined, and the standard is unfair dealing. *Id.* If the claimant is an insider, the proponent of equitable subordination has the initial burden of presenting evidence of unfair conduct by a preponderance of the evidence. *Id.; Octagon Roofing*, 141 B.R. at 980; *Unsecured Creditors' Comm. v. Paribas (In re Heartland Chems., Inc.)*, 136 B.R. 503, 517 (Bankr.C.D.Ill.1992). The burden then shifts to the claimant to demonstrate its good faith and fairness of conduct. *Id.*

■ Initially, the Court must determine whether Garlin is an insider of Barry and Marsha. Pursuant to the definition of "insider," as set forth in § 101(31) of the Code, Barry and Marsha are individuals, and Garlin is a corporation. However, Barry and Marsha are not directors or officers of Garlin. The Court finds that Garlin is an insider with respect to Marsha because she supported and participated to some extent in the acquisition of the junior mortgage and notes from Community Bank. Marsha represented herself to be an agent of Garlin. Gary testified that after discussions with Marsha, he decided to accept appointment as one of Garlin's officers and directors. In addition, Marsha was copied on correspondence that Barry had with Community Bank regarding the purchase of its notes and mortgage. Trustee Ex. Nos. 5–9. Thus, the Court reasonably infers that she knew about and acquiesced to all of Barry's dealings and negotiations with Community Bank. Clearly, Marsha was actively involved in the purchase of Community Bank's mortgage and notes on behalf of Garlin. The Court finds that Marsha was a willing and active participant with Barry in Garlin's activities.

11. The Bankruptcy Code defines the term "insider," if the debtor is an individual, as: "(i) relative of the debtor or of a general partner of the debtor; (ii) partnership in which the debtor is a general partner; (iii) general partner of the debtor; or (iv) corporation of which the debtor is a director, officer, or person in control[.]" 11 U.S.C. § 101(31)(A).

■ The Court also finds that Garlin is an insider with respect to Barry. Garlin was controlled and dominated by Barry, along with Marsha's involvement and assistance. Indeed, Barry made all of the decisions with respect to the operations of Garlin. Barry was the driving force behind the formation of the corporation whose sole purpose was to acquire the notes and mortgage from Community Bank. Barry did not consult Garlin's principals, Linda and Gary, when negotiating with Community Bank. Rather, he performed all of the duties of the corporation, including drafting the board minutes and the corporate resolutions. Both Linda and Gary testified that they made no decisions concerning the operations of Garlin, did not provide any capital to Garlin, and did not perform their duties as officers and directors of Garlin. In fact, Linda and Gary were unaware of the actions taken by Garlin, through Barry with Marsha's assistance, in furtherance of the purchase of Community Bank's notes and mortgage.

Moreover, another company controlled by Barry and Marsha, K & E Investments, loaned $25,000.00 to Garlin to purchase the notes and mortgage from Community Bank. Trustee Ex. No. 14. Barry directed Garlin to execute a note, which he drafted, payable to K & E Investments with respect to repayment of the amount loaned. *Id.* The note contained the potential for 20% interest upon default. *Id.* Barry also caused Garlin to hire him as Garlin's attorney in connection with the transaction with Community Bank. *Id.* Clearly, Barry directed and controlled all of the corporate actions taken by Garlin. In sum, both Barry and Marsha controlled Garlin. Accordingly, Garlin is an insider of both Barry and Marsha.

■ Turning to the three-prong test, the *Lifschultz* case first requires a determination of whether there has been inequitable conduct. 132 F.3d at 344. Specifically, the *Lifschultz* court has noted that "[i]n the context of equitable subordination, the type of conduct that has been considered 'inequitable' generally falls within the following categories: '(1) fraud, illegality, breach of fiduciary duties; (2) undercapitalization; and (3) claimant's use of the debtor as a mere instrumentality or alter ego.'" *Id.* at 344–45 (*quoting In re Missionary Baptist Found. of Am., Inc.,* 712 F.2d 206, 212 (5th Cir.1983)). The misconduct required for this first element need not be related to the claim, and the subordination should be proportionate to the claimant's wrongdoing. *Joy Recovery,* 286 B.R. at 84. The more bona fide the transaction is, the less likely a court will find it inequitable. *Heartland Chems.,* 136 B.R. at 517. The Seventh Circuit has noted that "[c]ases subordinating the claims of creditors that dealt at arm's length with the debtor are few and far between." *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting,* 908 F.2d 1351, 1356 (7th Cir.1990).

■ Applying the standards enumerated in *Lifschultz* to these cases, the Court concludes that equitable subordination is warranted. It can hardly be said that Garlin dealt with Barry and Marsha at arm's length. After all, Garlin was formed by Barry for the sole purpose of purchasing Community Bank's mortgage and notes at a deeply discounted rate. Although this fact alone does not constitute inequitable conduct, the formation of Garlin, coupled with the fact that Barry and Marsha controlled and dominated that company and led its negotiations with Community Bank, demonstrates that Barry and Marsha devised a scheme to receive some of the proceeds from the sale of the Western Avenue Properties to the exclusion of their unsecured creditors. Based on the evidence, the Court concludes that Barry and

Marsha contrived an elaborate scheme to protect some of their equity in the Western Avenue Properties to the exclusion of their unsecured creditors. Barry acted as the puppeteer of Garlin in order to purchase Community Bank's mortgage and notes, and Marsha was involved as an active participant in the scheme to protect her and Barry's equity in the Western Avenue Properties.

If Garlin's secured claims are allowed and paid, all of the remaining proceeds from the sale of the Western Avenue Properties will go for the benefit of Barry and Marsha. Specifically, Barry testified that he would demand payment of his $35,000.00 fee from Garlin. Moreover, K & E, L.L.C., which is owned by Barry and Marsha, would receive the $25,000.00 plus accrued interest that it loaned to Garlin to purchase Community Bank's mortgage and notes. The Court will not countenance Barry's and Marsha's actions and reward their manipulations and attempts to thwart the Trustee's administration of the estates to the detriment of the unsecured creditors.

Although the facts in this matter are not typical of the situations in which courts equitably subordinate claims—breach of fiduciary duty, fraud, illegality, undercapitalization, and the claimant's use of the debtor as a mere instrumentality or alter ego—the actions taken here nevertheless warrant the imposition of equitable subordination of Garlin's claims. In this matter Barry and Marsha, the debtors, created and used Garlin, the claimant, as a mere instrumentality to obtain the proceeds from the sale of the Western Avenue Properties. Barry's and Marsha's conduct constituted unfair dealing and was in furtherance of their scheme.

With respect to the second element, the creditor must actually utilize its power to its own advantage or to the detriment of the other creditors. *Octagon Roofing,* 157 B.R. at 858. Garlin was formed and used to enhance Barry's and Marsha's positions at the expense of their unsecured creditors. This inequitable conduct of Barry and Marsha, through Garlin, if allowed, will cause injury to the unsecured creditors of Barry's and Marsha's estates who would otherwise have an interest in and possibly receive a small dividend from the remaining sale proceeds of the Western Avenue Properties.

Finally, the equitable subordination of Garlin's claims must not be inconsistent with other provisions of the Bankruptcy Code. *See Lifschultz,* 132 F.3d at 344. The Court finds that subordinating Garlin's claims is not inconsistent with other provisions of the Code. By subordinating the claims, the Court is preventing Barry and Marsha from thwarting the Trustee's administration of the estates and paying dividends to the unsecured creditors from the remaining sale proceeds.

In short, the Trustee has demonstrated by a preponderance of the evidence unfair conduct by Garlin, through Barry and Marsha. The Court finds that Garlin has failed to show good faith and fairness of its conduct. In sum, the Court concludes that the three elements for the application of equitable subordination pursuant to § 510(c) have been met. Equity dictates that Garlin's claims be fully subordinated in both Barry's and Marsha's cases to the claims of the unsecured creditors.

### D. Whether Garlin's Claims Should Be Disallowed as Untimely

Lastly, the Trustee contends that Garlin filed its proofs of claim after the bar date and that, thus, its claims should be disallowed. The Trustee's argument with respect to this point is disingenuous. A secured creditor is not required to timely file a claim in a bankruptcy case.

*In re Adams,* 264 B.R. 901, 904 (Bankr. N.D.Ill.2001); *In re Burrell,* 85 B.R. 799, 801 (Bankr.N.D.Ill.1988); *see also* Fed. R. Bankr.P. 3002(a) (requiring unsecured, not secured, creditors to file proofs of claim). Indeed, the failure of a secured creditor to file a proof of claim is not a basis for avoiding the lien of that secured creditor. *In re Tarnow,* 749 F.2d 464, 467 (7th Cir. 1984). Rather, the creditor maintains its pre-petition lien even if it fails to file a claim. *Id.* However, if the secured creditor is undersecured and seeks to recover the deficiency through bankruptcy, or if the secured creditor seeks a distribution under a confirmed plan, it must file a claim. *Adams,* 264 B.R. at 904; *Strong v. United States (In re Strong),* 203 B.R. 105, 112 (Bankr.N.D.Ill.1996).

The notice sent by the Clerk of the Bankruptcy Court on January 20, 2004 that set the date of April 28, 2004 as the last day for filing claims by creditors and governmental units was not applicable to Garlin, a secured creditor. The Court finds that Garlin filed its proofs of claim on July 19, 2004 in both Barry's and Marsha's cases, within the deadline set by the Court in the July 1, 2004 orders that authorized the Trustee to sell the Western Avenue Properties and required all lien claimants to file claims. Moreover, Community Bank, the original secured claimant in these cases, filed its proofs of claim on September 27, 2002, long before the deadline set by the Court. Garlin, as the assignee of those claims, was not required to file additional proofs of claim, although it was required to file evidence of the transfer of the claims pursuant to Bankruptcy Rule 3001(e)(2) as discussed *supra.* Thus, the Court overrules the Trustee's objection to Garlin's claims on the basis that those claims were untimely.

## IV. CONCLUSION

For the foregoing reasons, the Court sustains, in part, the Trustee's objections. The Court finds that Garlin's claims should be equitably subordinated under § 510(c) to the claims of all unsecured creditors for Garlin's failure to comply with Bankruptcy Rule 3001(e)(2). Further, Garlin's claims should be equitably subordinated as a result of its inequitable conduct. Finally, the Court overrules the Trustee's objections to Garlin's claims on the bases that the underlying debt owed to Garlin was extinguished under the doctrine of merger and that the claims were not timely filed.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.